JL

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rafeal Deshawn Newson,<br>          Plaintiff,<br>v.<br>State of Arizona, et al.,<br>          Defendants. | No.   CV 22-01191-PHX-JAT (JZB)<br><br>**ORDER TO SHOW CAUSE** |

Plaintiff Rafeal Deshawn Newson,[1] who is confined in the Waupun Correctional Institution in Waupun, Wisconsin, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and paid the filing and administrative fees. The Court will require Plaintiff to show cause, within 30 days of the filing date of this Order, why the statute of limitations does not bar his claims.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the

---

[1] Plaintiff is also known as Marquis Johnson and Marquis Lee Johnson.

JDDL

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.    Complaint**

In his eight-count Complaint, Plaintiff sues the State of Arizona; the Governor of Arizona; the Arizona Department of Corrections, Rehabilitation and Reentry (ADC) "Warden of Prisoners"; Maricopa County; the Maricopa County Attorney's Office (MCAO); Maricopa County Attorneys Gayle Cochran, Cindy J. Winters, and Alan Davidson; the Honorable Ruth H. Hilliard; the Honorable Michael Cruikshank; the Maricopa County Sheriff's Office (MCSO); the Pima County Sheriff's Department (PCSD); Pima County Sheriff Deputies 1 and 2; and the Chief Executive Officer of Pfizer Pharmaceutical Company. Plaintiff asserts claims of fraud, purportedly in violation of the

Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments and article 1, section 10 of the United States Constitution. He seeks monetary relief in the amount of $18,290,880,000.

In **Count One**, Plaintiff alleges that in on March 20, 1999, Arizona law enforcement officers approached him and took him to a police substation in Glendale. Plaintiff was told he had the right to remain silent, and he did so. Police officers told him that his name was Marquis Johnson, and he was transferred to the Madison Street Jail and booked under the name Marquis Johnson. Subsequently, Plaintiff was convicted and sentenced to a 19.5-year term of imprisonment under his alias, Marquis Johnson, although the State of Arizona "knew [his] real name" on April 27, 1999, when Wisconsin officials "sought [him] on unrelated charges."

Plaintiff alleges, "The fact and question remained" that if there was no Social Security number that matched the name Marquis Johnson "as well as the body, how did the federal government release monies for over 17 years and 4 months" that he spent in Arizona custody, "or a trust fund account (i.e., with money transactions, capital and interest) being actively used, or how was federal/state taxes executed for so long under a fake name using [Plaintiff] as security." Plaintiff asserts Defendant State of Arizona was represented by Defendants Maricopa County, MCAO, Cochran, Winters, and Davidson in his criminal proceeding. He claims Defendant Hilliard "knew this name was fake," as the county attorneys had mentioned, but she still conducted a trial.

In **Count Two**, Plaintiff alleges that on March 21, 1999, the day after his arrest, he was taken to an initial appearance in Maricopa County Superior Court. No criminal complaint or arrest warrant existed because he was "allegedly apprehended without any complaint filed." Plaintiff remained detained although Defendant State of Arizona, represented by Defendants Maricopa County, MCAO, Cochran, Winters, and Davidson, knew no criminal complaint was filed.

In **Count Three**, Plaintiff alleges that no criminal complaint was filed within 48 hours of his initial appearance on March 21, 1999. Plaintiff was detained in the Madison

Street Jail when Defendant State of Arizona, represented by Defendants MCAO, Cochran, and Winters "took the casefile to the 231GJ325 grand jury panel without a criminal complaint being initially filed first." Only Phoenix Police Department report DR#90-447776 was "acknowledged." The grand jury indicted Plaintiff on March 26, 1999. Defendant Hilliard conducted a jury trial, convicted, and sentenced Plaintiff "without [his] release" from the MCSO, pending further postponement of preliminary hearings.

In **Count Four**, Plaintiff alleges that in April 1999, he was sent a supervening indictment, but he did not receive any grand jury transcripts. Plaintiff asked his public defender if he had the transcripts, and he replied via letter, "I never had them, and never requested them." In 2003, the Clerk of the Maricopa County Superior Court sent Plaintiff a court index docket for appellate purposes. There was no record that the grand jury transcripts had been filed. In 2009, Plaintiff wrote to the Clerk of the Maricopa County Superior Court and requested another court index docket, but there again was no record that the grand jury transcripts had been filed. In 2010, Plaintiff again corresponded with the Clerk, and he was sent another court index. This time, the 2010 index read, "Grand jury transcripts were filed on April 30, 1999." Plaintiff asked the Clerk's Office who had made the entry. The employee who had made the entry was no longer employed by the Clerk's Office. Plaintiff did not receive the grand jury transcripts until January 2019.

In **Count Five**, Plaintiff alleges that in April 1999, while he was in custody in Maricopa County, the State of Wisconsin "sought" Plaintiff under the Uniform Criminal Extradition Act. Plaintiff attended three fugitive of justice hearings during which Wisconsin presented an unfiled 1996 criminal complaint and felony warrant and an authorization for extradition. Because Wisconsin officials did not have a governor's rendition warrant, Plaintiff was not extraditable. On July 10, 2000, while Plaintiff was in custody at the Arizona State Prison Complex-Tucson, he was transported to Pima County Superior Court and appeared before Defendant Cruikshank. Wisconsin officials "sought" Plaintiff pursuant to Article IV of the Interstate Agreement on Detainers (IADA). The IADA required that a criminal complaint from the "party/demanding state" be pending.

The 1996 criminal complaint was not filed. Plaintiff claims the State of Arizona "participated in Wisconsin kidnapping [him] when Arizona ordered and allowed Wisconsin to extradite [him], based on the faxing, the use, and action on fraudulent documents."

In **Count Six**, Plaintiff alleges that he was scheduled for release from prison in Arizona on July 5, 2016. That day, Plaintiff was taken to intake to be released. Correctional officers told Plaintiff that two PCSD deputies were there to pick up Plaintiff on a "courtesy hold" for Milwaukee County, Wisconsin. Plaintiff "refused" and was warned that they would use whatever force was necessary to "get [him] to comply." Plaintiff was "roughly cuffed" and placed in a PCSD vehicle. Plaintiff was "kidnapped" to the Pima County Adult Detention Center and remained in "the hole/restrictive housing" for four days. "Federalize[d] private extradition agents" arrived at the jail to transport Plaintiff "around the country" for 18 days, with stops at multiple county jails. Plaintiff later learned that there was no offer for temporary custody transfer order to execute the "human trafficking of [his] person."

In **Count Seven**, Plaintiff alleges that in 2005, while he was in custody at ASPC-Florence Central Unit, he received recreation in an eight-foot by eight-foot metal cage in 120-degree weather. Prisoners usually only have two hours or less in the cage for recreation, but that day, Plaintiff was "stuck" with other prisoners for more than four hours. The water in his water bottle was "ration[ed]" for two hours. When officers finally arrived, Plaintiff was "laid out." The officers told him they were taking him to the medical unit. Medical staff put Plaintiff on an EKG machine, gave him water, and placed cool packs on his body. Plaintiff was told his blood pressure was dangerously high and was given hydrochlorothiazide. Plaintiff was not told how to take the drug.

Subsequently, Plaintiff's blood pressure was still high, and he was given Enalapril, which is used for hospitalized heart attack patients. Plaintiff was not monitored or hospitalized and had "many bad reactions/side effects, along with other issues," for which psychiatry staff prescribed him Prozac. Plaintiff was finally told to take the "water pill" in

the morning and was told that his cholesterol was high.

In 2008, Plaintiff requested a natural way to lower his cholesterol, such as fish oil. The State of Arizona and prison medical staff told Plaintiff they did not provide that treatment. In 2015, the medications Plaintiff had been taking were taking a toll on his body. Plaintiff "wrote and complained to" medical staff about "30 to 40 different side effects, bad reactions, and injuries" he had suffered from taking the medications. A nurse practitioner (NP) met with Plaintiff because Plaintiff had briefly stopped taking all his medications after he experienced his "throat closing," shortness of breath, dizziness, and fainting. The NP put Plaintiff on a four-week plan to take all his medications.

"Days into the plan," Plaintiff began having the same "bad reactions." He did not see the NP for two weeks. When Plaintiff saw the NP, he explained that the four-week plan did not work. The NP responded that she did not remember a four-week plan. The visit was "cut short" because Plaintiff argued with the NP and shouted at her, "you assaulted me with those drugs, you are a fraud!"

Subsequently, Pfizer Pharmaceutical Company admitted that Lipitor and its generics were "bad drugs." The State of Arizona and prison medical staff discontinued prescribing Lipitor. Plaintiff requested fish oil or some other form of medication for his high cholesterol and was told to seek alternative treatment but was not told "what that alternative treatment was." The State of Arizona stopped using Lipitor without providing an alternative, without informing him of the discontinuation, and without warning him of the dangers of Lipitor.

In **Count Eight**, Plaintiff alleges that during his incarceration from 2005-2016, the State of Arizona contracted with Pfizer Pharmaceutical Company to provide Plaintiff Lipitor. Pfizer "had its counsels, doctors, and agents market its drugs" to the State of Arizona and prison medical providers. Medical staff ordered Plaintiff to take Lipitor, which caused three dozen negative reactions. According to Plaintiff, Pfizer "conspired" with the State of Arizona to monopolize the drug market in Arizona prisons.

. . . .

**III.    Failure to State a Claim**

Failure to state a claim includes circumstances where a defense is "complete and obvious from the face of the pleadings." *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). In the absence of waiver, the Court may raise the defense of statute of limitations sua sponte. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993); *see also Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) of prisoner's time-barred complaint).

The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1).

Accrual of § 1983 claims is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998). Thus, to be timely, Plaintiff's claims must have accrued no more than two years before his Complaint was filed on July 15, 2022.

Plaintiff's claims arise from events that allegedly occurred in between 1999 and 2016. Thus, it appears Plaintiff's claims are barred by the statute of limitations. In an abundance of caution, however, the Court will permit Plaintiff an opportunity to show cause, in writing, why the statute of limitations does not bar his claims. Plaintiff's response to this Order **shall be limited to this issue** and must be filed within **30 days** of the date this Order is filed.

**IV.    Warnings**

**A.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B.     Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff is **ORDERED TO SHOW CAUSE**, in writing, within **30 days** of the date this Order is filed, why this case should not be dismissed as barred by the statute of limitations. **Plaintiff's written response shall be limited to this issue only**.

(2)     If Plaintiff fails to file a response to this Order to Show Cause within **30 days** of the date this Order is filed, the Clerk of Court must enter a judgment of dismissal of this action without further notice to Plaintiff.

Dated this 22nd day of March, 2023.

James A. Teilborg
Senior United States District Judge